## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Frederick J. Kapala | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 11 C 50375 | **DATE** | 11/13/2012 |
| **CASE TITLE** | Naylor v. Streamwood Behavioral Health System, et al. | | |

**DOCKET ENTRY TEXT:**

Defendants' motions to dismiss and to continue briefing schedule [16] [19] [47] are denied as moot. Defendants' motions to dismiss [31] [33] [35] are granted. Counts I, III, IV, V, and VIII are dismissed. All Title VII claims against Rock River are dismissed. All claims against Ernst and Isaacs are dismissed and these defendants are terminated from this case. Plaintiff's motion to strike defendants' affirmative defenses [38] and miscellaneous motions [40] [43], which are actually responses to defendants' motions, are denied.

■[ For further details see text below.]

Docketing to mail notices.

On April 28, 2012, plaintiff, Ricky W. Naylor, filed a nine-count, second-amended complaint against defendants, Rock River Residential Center ("Rock River"), Streamwood Behavioral Health System d/b/a Universal Health Services, Inc. ("Streamwood"), Michael Isaacs, and Debbie Ernst, arising out of an alleged discriminatory termination of employment. Before the court are Federal Rule of Civil Procedure 12(b)(6) motions to dismiss filed by Rock River, Streamwood, Ernst and Isaacs, respectively. Also before the court is plaintiff's motion to strike affirmative defenses. For the reasons that follow, the motions to dismiss are granted and the motion to strike is denied.

### I. BACKGROUND

Between November 26, 2001 and September 14, 2011, plaintiff was employed by Streamwood, at a facility located in Rockford, Illinois called Rock River Residential Academy. In particular, plaintiff alleges that he "was an employee of Streamwood, within the meaning of Title VII of the Civil Rights Act of 1964." Streamwood and Rock River are wholly owned subsidiaries of Universal Health Services, Inc. ("UHS")." Ernst, plaintiff's direct supervisor, is an employee of three different entities: Streamwood, Rock River, and UHS. Isaacs is Streamwood's Director of Human Resources and a managerial employee of Streamwood and UHS.

On or about September 8, 2011, Ernst began an investigation into possible misconduct by plaintiff based on videotape evidence and an interview with another employee of Streamwood. Ernst concluded that plaintiff had attempted to cover up abuse of one of Streamwood's residents by a co-worker, Edwards. Plaintiff alleges that prior to the investigation by Ernst, he had informed Ernst of the possible misconduct by the co-worker.

As a result of the investigation, plaintiff's employment was terminated. Ernst informed plaintiff that his employment was to be terminated based on violations of company policies, including: (1) failure to file an unusual incident report, (2) code of ethics, (3) employee conduct and work rules and, (4) the Department of Children and Family Services Mandated Reporter status. Plaintiff alleges that his employment was terminated

based on his race and that "any assertion to the contrary is pretext for race, sex and retaliatory discrimination." Plaintiff further alleges that Isaacs, acting as Director of Human Resources of Streamwood "upheld" the decision by Ernst to terminate his employment.

In Counts I, II, and VI plaintiff alleges that defendant Rock River terminated his employment based on his gender and race and retaliated against him in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981. In Count VIII, plaintiff alleges that Ernst and Isaacs interfered with a contractual relationship in violation of § 1981. In Count IX, plaintiff alleges that all defendants retaliated against him in violation of § 1981. In Count III, plaintiff alleges a supplemental state law claim against Rock River and Streamwood for promissory estoppel. In the remaining counts, plaintiff asserts additional supplemental state law claims against all defendants for negligence (Count IV), intentional infliction of emotional distress ("IIED") (Count V), and defamation (Count VII).

## II. MOTION TO DISMISS

In its motion to dismiss, Rock River argues that (A) the Title VII claims alleged in Counts I, II, and VI are untimely, (B) allegations of gender discrimination in violation of § 1981 within Count I should be stricken, (C) the Illinois Human Rights Act ("IHRA") preempts the state law claims in Counts IV and V, (D) plaintiff failed to state a claim of IIED in Count V, and (E) plaintiff failed to state claim for breach of contract in Count III. In a separate motion to dismiss, Streamwood joins in arguments (C), (D), and (E). In yet another motion to dismiss, Ernst and Isaacs join in arguments (C) and (D), and also argue (F) improper service and (G) that plaintiff failed to state a claim for intentional interference with a contractual relationship in Count VIII.

In evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court must look to whether the complaint states a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A court must accept as true all of the well plead allegations contained in the complaint and make reasonable inferences in favor of the non-moving party. In re marchFIRST Inc., 589 F.3d 901, 904 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A complaint that contains factual allegations that are "merely consistent with a defendant's liability" stops short of the line between possibility and plausibility of entitlement to relief. Id. (quotation marks omitted).

### A. 90-Day Limitation Period

In its motion to dismiss, Rock River argues that by failing to add Rock River as a defendant in his complaint until after the 90-day statute of limitations period had expired, plaintiff cannot maintain his Title VII civil action in federal court against Rock River. Plaintiff argues that the doctrine of equitable tolling applies because he pursued his legal rights within the 90-day period and made a good faith error in not adding Rock River as a defendant within 90 days of receiving his Equal Employment Opportunity Commision ("EEOC") right to sue letter.

A civil action alleging a Title VII violation must be filed within 90 days of receiving a right to sue notice from the EEOC. 42 U.S.C. § 2000e-5(f)(1); Threadgill v. Moore U.S.A., Inc., 269 F.3d 848, 849-50 (7th Cir. 2001). The 90-day period of limitation set forth in § 2000e-5(f)(1) begins to run on the date that the EEOC right-to-sue notice is actually received either by the claimant or by the attorney representing him in the Title VII action. Threadgill, 269 F.3d at 849-50. However, the 90-day period of limitations in Title VII actions may be equitably tolled when circumstances warrant. Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 398 (1982). Equitable tolling is to be restricted and reserved only for situations in which the claimant has been prevented in some extraordinary way from filing his complaint in time and has otherwise pursued his rights diligently. Lee v. Cook Cnty., 635 F.3d 969, 972 (7th Cir. 2011). Such extraordinary circumstances exist where a defendant "prevents a plaintiff from obtaining information that he needs in order to be able to file a complaint." Jay E. Hayden Found. v. First Neighbor Bank, N.A., 610 F.3d 382, 385 (7th Cir. 2010).

The EEOC issued a right to sue letter to plaintiff on December 9, 2011, and on December 20, 2011

plaintiff filed suit against Streamwood, Ernst, and Isaacs. There is no question that this was within the 90-day period required by the statute, which expired March 19, 2012. However, plaintiff failed to add Rock River until April 13, 2012, which was beyond the 90-day period. Plaintiff's EEOC complaint named Rock River as a defendant, and once the right-to-sue letter was received, plaintiff was on notice that it was necessary to file a complaint against Rock River within the 90-day period. Plaintiff has offered no explanation as to why he failed to name Rock River as a defendant. In addition, plaintiff does not suggest that his failure to add Rock River as a defendant was a result of any bad faith or misrepresentation on the behalf of any defendant. Unlike a procedural mistake that would support the application of equitable tolling, such as filing in the incorrect court, plaintiff, with full knowledge of the factual circumstances, failed to name Rock River as a defendant until after the 90-day period had elapsed, even when he was specifically instructed to do so by the EEOC.

Because the 90-day limitation period lapsed prior to plaintiff naming Rock River as a defendant, plaintiff's claims against Rock River are untimely. Therefore, the Title VII claims in Counts I, II, and VI against Rock River are dismissed.

### B. Strike Allegations of Gender Discrimination

Rock River moves to strike allegations of gender discrimination in violation of § 1981 from Count I of plaintiff's second amended complaint because gender is not a protected class of persons under § 1981. The court agrees. Plaintiff cannot pursue gender discrimination claims pursuant to § 1981 because it only "prohibits 'racial discrimination.'" 42 U.S.C. § 1981(a)-(c); see also Morris v. Office Max, Inc., 89 F.3d 411, 413 (7th Cir. 1996) (noting that § 1981 addresses racial discrimination in contractual relationships). Therefore, the allegations of gender discrimination under § 1981 are stricken from plaintiff's second amended complaint. Because the Title VII claims against Rock River have been dismissed and the § 1981 claims alleged against Rock River in Count I have been stricken, Count I is dismissed in its entirety.

### C. Preemption under the Illinois Human Rights Act

Rock River and Streamwood argue that the IHRA preempts any supplemental state law claims with respect to civil rights violations, and therefore, this court is without jurisdiction over Counts IV and V alleging negligence and IIED. The court agrees.

The IHRA states that "[e]xcept otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act." 775 ILCS 5/8-111(D). Specifically, the IHRA preempts state law claims that are, in essence, claims that seek redress for civil rights violations within the meaning of the IHRA. Geise v. Phoenix Co. of Chi., Inc., 159 Ill. 2d 507, 516 (1994). In deciding if a claim is properly before the court, it must be determined "whether the tort claim is inextricably linked to a civil rights violation such that there is no independent basis for the action apart from the [IHRA] itself." Maksimovic v. Tsogalis, 177 Ill. 2d 511, 517 (1997). The issue is whether the plaintiff can "establish the necessary elements of each tort independent of any legal duties created by the [IHRA]." Naeem v. McKesson Drug, Co., 444 F.3d 593, 602 (7th Cir. 2006) (quotation marks omitted). If plaintiff is unable to do so, then the common law tort claim is inextricably linked to a civil rights violation and will be preempted by the IHRA. Maksimovic, 177 Ill. 2d at 518. When a claim is preempted by the IHRA, an Illinois state court lacks jurisdiction over it, and thus, so does a federal district court sitting in Illinois which is considering a supplemental state claim. Guy v. State of Ill., 958 F. Supp. 1300, 1312 (N.D. Ill. 1997). Instead, such claims proceed in front of the Illinois Human Rights Commission. Id.

It is a civil rights violation for any employer or employee to engage in unlawful discriminatory employment practices. Unlawful discrimination is "discrimination against a person because of his or her race, color, religion, national origin, ancestry, age, sex, marital status, order of protection status, disability, military status, sexual orientation, or unfavorable discharge from military service." 735 ILCS 5/1-103(Q). As explained in Naeem:

The distinction between claims that are preempted and claims that are not preempted turns on the legal duty that the defendant allegedly breached; that is, if the conduct would be actionable even aside from its character as a civil rights violation because the IHRA did not furnish the legal duty that the defendant was alleged to have breached, the IHRA does not preempt a state law claim seeking recovery for it.

Naeem, 444 F.3d at 604 (alterations and quotation marks omitted). Thus, if, and to the extent, plaintiff has alleged the elements of negligence or IIED without reference to legal duties created by the IHRA, the tort claims are not inextricably linked to a civil rights violation and this court may exercise subject matter jurisdiction over the claims in Counts IV and V. See Maksimovic, 177 Ill. 2d at 517.

In a negligence action under Illinois law, the plaintiff must provide sufficient facts showing the existence of a duty owed by the defendant, a breach of that duty, and an injury proximately resulting from the breach. Cunis v. Brennan, 56 Ill. 2d 372, 374 (1974). The IHRA, among other things, creates a duty to protect employees from discrimination based on race. In this case, plaintiff has re-alleged all his facts from his Title VII claims in his negligence claim, including the allegations that supervisors failed to ensure that complaints of discrimination in the workplace were properly handled and that the investigations were conducted in a fair, impartial, and non-discriminatory manner. When a negligence complaint is based solely on the same factual allegations set forth in a Title VII claim, without any additional, independent facts to establish the elements of negligence, the facts are inextricably linked. Johnson v. Joliet Junior Coll., No. 06 C 5086, 2007 WL 1119215, at *2 (N.D. Ill. Apr. 10, 2007). An individual does not have a duty under Illinois law independent of IHRA to prevent discrimination based on national origin. Antonson v. United Armored Servs., Inc., No. 00 C 4095, 2002 WL 221605, at *6 (N.D. Ill. Feb. 12, 2002). Plaintiff argues that his negligence claim is based in a separate defamation claim, which can stand absent duties created by the IHRA. However, plaintiff incorrectly combines two separate causes of action. While a defamation claim may stand on its own absent the IHRA duties, the negligence claim in the second amended complaint is based solely on the alleged discriminatory practices of his employer, which cannot stand absent duties created by the IHRA. Because negligence has not been plead without reference to the alleged civil rights violations and the duties imposed by Title VII, the IHRA preempts this claim, and this court lacks jurisdiction to consider it. Therefore, Count IV is dismissed.

An IIED claim in Illinois requires that the plaintiff allege sufficient facts to show that (1) defendant's conduct was extreme and outrageous, (2) defendant intended to inflict severe emotional distress or knew that there was at least a high probability that his conduct would inflict severe emotional distress, and (3) defendant's conduct did cause severe emotional distress. Harriston v. Chi. Tribune Co., 992 F.2d 697, 702 (7th Cir. 1993) (citing McGrath v. Fahey, 126 Ill. 2d 78, 86 (1988)). Conduct is extreme and outrageous only if "the conduct has been so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency." Id. (citing Pub. Fin. Corp. v. Davis, 66 Ill. 2d 85, 89 (1976)). Without pleading additional facts, plaintiff relies solely on the discriminatory conduct alleged in his Title VII claim in his IIED claim. "[T]o the extent the IIED claim is based upon alleged discrimination, it is preempted by the IHRA." McDowell v. J.B. Hunt Transp., Inc., No. 03 C 6590, 2004 WL 1878334, at *5 (N.D. Ill. Aug. 10, 2004). Thus, the IHRA preempts plaintiff's IIED claim and Count V is dismissed.

### D. Failure to State a Claim for Intentional Infliction of Emotional Distress

Because plaintiff's IIED claim is preempted by the IHRA, the court need not determine whether plaintiff has stated a plausible IIED claim. However, plaintiff's failure to respond to defendant's motion acts as an abandonment or waiver of that claim and a forfeiture of any arguments against defendants' motion to dismiss the claim for failure to state a claim. Alioto v. Town of Lisbon, 651 F.3d 715, 719 n.1, 721 (7th Cir. 2011) (holding that forfeiture occurs where the "litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss"); Bonte v. U.S. Bank, N.A., 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."); Stransky v. Cummins Engine Co., 51 F.3d 1329, 1335 (7th Cir. 1995) (stating that federal courts "will not invent legal arguments for litigants"). Consequently, Count V is also

dismissed for failure to state a claim.

### E. Failure to State a Claim for Breach of Contract

Rock River and Streamwood argue that plaintiff has failed to state a claim for breach of contract in Count III because he failed to attach to his complaint copies of the alleged subject manual or policies creating an enforceable contract, which he alleges Rock River and Streamwood breached. Plaintiff has not responded to this argument either, and has thereby waived any argument that he has stated a claim for breach of contract. See Alioto, 651 F.3d at 719 n.1. In addition, plaintiff has indicated in an email dated June 21, 2012, that he is no longer pursuing the state claim of breach of contract, stating, "[i]t's a nonstarter and not worth the time arguing." Therefore, Count III of plaintiff's second amended complaint is dismissed.

### F. Improper Service

Isaacs and Ernst move to dismiss all counts against them pursuant to Rule 12(b)(5), arguing that service of process was defective. First, plaintiff argues that pursuant to Rule 5, service upon counsel for defendants is sufficient. Fed. R. Civ. P. 5(b)(1). Defendants correctly note, however, that Rule 5 only applies to pleadings filed after the initial complaint, and not the original complaint and summons. Fed. R. Civ. P. 5(a)(1)(B). Therefore, Rule 5 does not apply under these circumstances and service must satisfy Rule 4.

Second, plaintiff argues that leaving summons with the director of the corporation where the individual defendants work is sufficient. Rule 4 provides the requirements of service of process on individual defendants. Fed. R. Civ. P. 4(e). Without proper service of process, a court cannot exercise personal jurisdiction over a defendant. Mid-Continent Wood Prod., Inc. v. Harris, 936 F.2d 297, 301 (7th Cir. 1991). An individual may be served by: (1) delivering a copy of the summons and of the complaint to the individual personally; (2) leaving a copy of each at the individual's dwelling or usual place of adobe with someone of suitable age and discretion who resides there; (3) delivering a copy of each to an agent authorized by appointment or by law to receive service of process; or (4) following State law for serving summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made. Fed. R. Civ. P. 4(e)(1)-(2).

Illinois requires that an individual be served by (1) leaving a copy of summons personally or (2) by leaving a copy at the defendant's usual place of abode, with some person of the family or a person residing there, of the age of 13 years or upwards, and informing that person of the contents of the summons, provided the officer or other person making service shall also send a copy of the summons in a sealed envelope with postage fully prepaid, addressed to the defendant at his or her usual place of abode. 735 ILCS 5/2-203.

On April 13, 2012, Fransesca Montanez, on behalf of plaintiff, attempted to serve summons to the individual defendants by leaving copies of the summons and complaint at the corporate office where these individuals worked. Montanez left the copies with the director of the corporate facility. There is no indication that the director of the corporate facility was an authorized agent to receive service pursuant to Rule 4(e)(2)(C), nor is there any assertion that defendant has attempted to serve process on the individuals at their homes. The act of leaving summons with the director of the corporate facility, and not with the individual defendants personally, did not constitute proper service under either Federal or Illinois law. Furthermore, plaintiff has not requested a waiver of service pursuant to Rule 4(d)(1). Therefore, all counts against Ernst and Isaacs are dismissed for insufficient service of process. See Fed. R. Civ. P. 12(b)(5).

### G. Failure to State a Claim of Intentional Interference with a Contractual Relationship.

Count VIII is alleged against Ernst and Isaacs only. Because plaintiff's claims against these defendants are dismissed for insufficient service it is unnecessary to address the issue of whether or not plaintiff has stated a plausible claim of intentional interference with a contractual relationship. Nevertheless, even if properly served, plaintiff has failed to respond to Ernst and Isaacs' motion to dismiss for failure to state a claim with respect to this Count, and has thereby waived any arguments opposing the motion. See Alioto, 651 F.3d at 719 n.1. Therefore, Count VIII of plaintiff's second amended complaint is also dismissed for failure to state a claim.

### III. PLAINTIFF'S MOTION TO STRIKE

Plaintiff moves to strike a number of affirmative defenses asserted by Streamwood and Rock River in their partial answer to plaintiff's second amended complaint. Since Counts I, III, IV, V, and VIII are dismissed, the court will only analyze the affirmative defenses with respect to the remaining claims.

Rule 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A Rule 12(f) motion is the appropriate procedure for objecting to an insufficient defense. MPC Containment Sys., Ltd. v. Moreland, No. 05 C 6973, 2008 WL 1775501, at *2 (N.D. Ill. Apr. 17, 2008). Motions to strike are generally disfavored because of the likelihood that they may only serve to delay proceedings, but when striking portions of a pleading "remove[s] unnecessary clutter from the case," the motion may "serve to expedite, not delay." Heller Fin. Inc. v. Midwhey Powder Co., 883 F.2d 1286, 1294 (7th Cir. 1989). This holds true with respect to motions to strike affirmative defenses. Id. "Affirmative defenses will be stricken only when they are insufficient on the face of the pleadings." Id. Defenses generally "will not be struck if they are sufficient as a matter of law or if they present questions of law or fact." Id. This court has previously declined to decide, but assumed that the plausibility standard articulated in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), and Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), applies to affirmative defenses. See Champion Steel Corp. v. Midwest Strapping Prod., Inc., No. 10 C 50303, 2011 WL 5983297, at *5 n.2 (N.D. Ill. Nov. 28, 2011). While the majority of courts in this circuit have agreed that the plausibility standard applies, the issue remains unresolved. See, e.g., Shield Tech. Corp. v. Paradigm Positioning, LLC, No. 11 C 6183, 2012 WL 4120440 at *1 (N.D. Ill. Sept. 19, 2012) (stating that the majority of courts have applied the standard in Twombly and Iqbal to affirmative defenses); Cassetica Software, Inc., v. Computer Sciences Corp., No. 11 C 2187, 2011 WL 4431031, at * 5 (N.D. Ill. Sept. 22, 2011) (adopting the standard in Twombly and Iqbal for affirmative defenses); Massenberg v. A & R Sec. Servs., Inc., 10 C 7187, 2011 WL 2909364, at *1 (N.D. Ill. July 18, 2011) (same). But see J & J Sports Prods., Inc. v. Munoz, Cause No. 1:10-CV-1563-WTL-TAB, 2011 WL 2881285, at *1 (S.D. Ind. July 15, 2011) (declining to follow courts applying Twombly and Iqbal to affirmative defenses). In any event, for the reasons that follow, the court finds that all of defendants affirmative defenses are adequately plead even under the more stringent standards of Twombly and Iqbal.

#### A. The Third Affirmative Defense

In their third affirmative defense, defendants allege that plaintiff was not terminated based on discrimination, but instead, was terminated for a legitimate business purpose. Defendants allege that where an individual is terminated for a legitimate business reason, there can be no intent to discriminate and therefore, no liability for discrimination. Defendants point to plaintiff's complaint for factual support for this affirmative defense. Specifically, plaintiff's failure to file an unusual incident report and plaintiff's complaint that other employees were "more at fault." Plaintiff argues that this defense should be stricken because it is insufficient for failing to offer factual allegations and instead only relies legal conclusions. The factual allegations from the second amended complaint are sufficient to satisfy the Twombly and Iqbal standards, because, as plead, it is plausible that plaintiff was terminated for legitimate business reasons and not with discriminatory intent. Therefore, plaintiff's motion to strike defendants' third affirmative defense is denied.

#### B. The Fifth Affirmative Defense

In their fifth affirmative defense, defendants allege that plaintiff's claims are barred because they exercised reasonable care to prevent and correct any alleged discriminatory behavior based on race and gender.[1] Plaintiff argues that this affirmative defense should also be stricken for failing to support its claim with factual allegations. Reasonable care is an affirmative defense where the defendant shows that "(a) that the employer exercised reasonable care to prevent and correct promptly any . . . harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 745 (1998). As plead, it is plausible that defendants exercised reasonable care and that plaintiff unreasonably failed to take advantage

of any preventive or corrective opportunities that the employer provided when it exercised reasonable care. Consequently, plaintiff's motion to strike the fifth affirmative defense is denied.

### C. The Eighth and Ninth Affirmative Defenses

In their eighth and ninth affirmative defenses, defendants allege that, if the plaintiff is damaged, those damages should be offset and reduced by amounts received in unemployment compensation, insurance payments, and the like, which plaintiff earned or through due diligence could have earned and by the defendant's failure to mitigate his own damages. Plaintiff argues that the two affirmative defenses should be stricken for failure to allege sufficient facts to support these allegations. Defendants argue that prior to discovery, it is unreasonable to expect them to plead additional facts surrounding the details of their eighth and ninth affirmative defenses. It is unclear what additional facts could be pleaded as to these defenses. As plead, it is plausible that defendants may prove plaintiff failed to exercise reasonable care or to mitigate his damages. Consequently, plaintiff's motion to strike defendants' eighth and ninth affirmative defenses is denied.

### D. The First and Fourteenth Affirmative Defenses

In its first affirmative defense, Streamwood argues that plaintiff has failed to exhaust and/or comply with the jurisdictional and administrative prerequisites necessary to pursue his claim, including, but not limited to, his failure to name Streamwood as a party in his EEOC charge. In its fourteenth affirmative defense, Streamwood argues that plaintiff's claims are barred because he has named the wrong party and under the doctrine of misnomer. Plaintiff argues that both affirmative defenses are moot as a result of the filing of his second amended complaint. However, there is nothing contained in the second amended complaint that renders these defenses moot and plaintiff offers no support for this argument. Thus, his motion to strike defendants' first and fourteenth affirmative defenses is denied.

### IV. CONCLUSION

For the foregoing reasons, defendants' motions to dismiss are granted. Counts I, III, IV, V, and VIII are dismissed. All Title VII claims against Rock River are dismissed. All claims against Ernst and Isaacs are dismissed and these defendants are terminated from this case. Plaintiff's motion to strike affirmative defenses is denied. Consequently, the § 1981 claim against Rock River in Count II, the § 1981 retaliation claim against Rock River in Count VI, the defamation claim against Streamwood and Rock River in Count VII, and the § 1981 retaliation claim against Rock River and Streamwood in Count IX remain pending.

---

1. As noted in section II.B., the allegations of gender discrimination are dismissed.